## R. P. W. SIMS ET AL. *v.* N. B. WARREN.

| 68 | 447 |
| 76 | 289 |
| 68 | 447 |
| 83 | 275 |

1. TAXATION. *Assessment. Certainty. Extrinsic evidence.*
   An insufficient description of land on the assessment roll cannot be aided by extrinsic evidence unless the roll itself furnishes the clue, which, followed by the aid of such evidence, will lead to the land intended. This is a constitutional requirement that cannot be dispensed with by legislation.

2. SAME. *Uncertainty in assessment. Identification. Intention of tax collector.*
   An assessment of land lacking in such certainty of description cannot be aided by evidence as to what the tax collector did, or intended to do, in selling the same for taxes.

3. TAX-TITLE. *Description. Patent ambiguity. Case in judgment.*
   On an assessment roll for 1879, a ¼ section of land was assessed: "40 a. S. E. ¼, S. 10, T. 8, R. 8, at $2.50 an acre; and 120 a. S. E. ¼, S. 10, T. 8, R. 8, at $1.00 an acre." Two persons, each owning 40 acres in said quarter, paid taxes, their receipts reading, "40 a. in S. E. ¼." Eighty acres were sold for taxes and conveyed as "80 a. of S. E. ¼, S. 10, T. 8, R. 8." *Held*, incompetent to aid the defective assessment, or apply the insufficient description in the deed, by evidence as to what land those paying intended to pay on, and what the collector intended to sell.

FROM the chancery court of Itawamba county.

HON. BAXTER MCFARLAND, Chancellor.

Appellee, Warren, filed the bill in this cause to confirm a tax-

title. The tax collector's deed conveyed to him "80 acres of the S. E. ¼, sec. 10, T. 8, R. 8., in Itawamba county." The bill alleged that the land intended to be sold and conveyed by this description was the N. ½ of the S. E. ¼ of said section.

The case was before this court at the October term, 1889, and the reader is referred to the report of the case on that appeal for a full statement of the facts. See *Sims* v. *Warren*, 67 Miss. 278.

On the assessment roll the said S. E. ¼ is assessed in two tracts as follows: "40 a. S. E. ¼, sec. 10, T. 8, R. 8," value $2.50 per acre; and "120 a. S. E. ¼, sec. 10, T. 8, R. 8," value $1.00 per acre.

The decree of the chancery court confirming the tax-title was then reversed and cause remanded, this court holding that the description on the face of the assessment roll was insufficient, and that there was no evidence in the record as to what land was intended to be assessed at $1.00 per acre and what at $2.50 per acre, or what 80 acre tract was sold.

On the return of the case to the lower court no further testimony was taken, except that of the deputy tax-collector who made the sale. From certain memoranda made by him on the assessment roll at the time the taxes were being collected, he testified that the taxes on the forty acres assessed at $2.50 per acre had been paid by one Cummings, and forty acres of the 120 acres assessed at $1.00 an acre had been paid by the administrator of one Morris. It was shown by these persons what land they owned in the quarter section, and what each thought he was paying on when he paid his taxes. The witness also identified the receipts issued to them as having been written by him at the time that the taxes were paid by them, but in each of the receipts the description is merely, "40 acres of the S. E. ¼, sec. 10, T. 8, R. 8." Opposite the assessment of the 120 acre tract was a memorandum in his hand-writing that forty acres thereof had been paid on, and eighty acres thereof had been advertised to be sold for taxes. The roll contained no entries other than those we have mentioned to identify the parcels assessed.

With this additional testimony the cause was set down for final

hearing, and the chancery court rendered a decree in favor of complainant and confirmed the tax-title, and from this decree the defendants appeal.

*Clifton & Eckford*, for appellants.

As we construe the former opinion in this case, the assessment was held to be void. Not only was there incurable uncertainty in the assessment, but it was impossible to tell which 80-acre parcel of the 160-acre tract was sold. The lower court and counsel for appellee seem to have forgotten that it is necessary to identify not only the land assessed, but the amount of charge or tax that is upon it. In both respects the assessment is void for uncertainty, and cannot be helped by parol testimony. But, assuming for argument that the cause was remanded to allow appellee to prove what land was intended to be assessed, we say that the additional testimony of the deputy tax collector, which was the only testimony in addition to that on the former appeal, wholly fails to identify the land assessed or the charge upon it. Neither he nor Cummings nor the administrator of Morris have thrown any light upon the question as to what part of the 160 acres was assessed at $2.50 and what part at $1.00 per acre. Having failed to show a valid assessment, it was useless to try to show what land was sold, since a valid assessment is a prerequisite of a valid sale.

*Newnan Cayce*, for appellee,

Filed a lengthy brief, which, without citation of authorities, reviewed the former opinion of the supreme court in this cause in the light of the evidence, and made the following points :—

1. The allegation of the bill that the land assessed and sold is the land in controversy, has never been denied in the answer or in argument. A mere inspection of the roll shows what land was intended to be assessed, for the entire quarter section is there assessed by proper subdivisions, 40 acres in one tract at $2.50 per acre, and 120 acres in the other tract at $1.00 per acre. There is no necessity for parol proof as to what land was intended to be assessed, since the roll itself settles that question. It was not necessary to specify location in the quarter section, for the statute expressly pro-

vides that failure to do so shall not vitiate an assessment. The constitutional requisite of ascertainment of value has been met, and there is no difficulty in fixing the amount of the charge on the quarter section. Mere intention of the assessor to locate specifically a tract is not indispensable to valid taxation. His duty and his intention under the law is to assess at a proper value the entire quarter section, and, this having been done, the taxation is fixed and the burden proportioned.

2. An assessment may be valid, and yet a sale under it void, because the land sold cannot be identified. By its opinion this court did not declare the *assessment* incurably void, but, as I construe it, the uncertainty arose in the *sale.* The trouble before arose from the fact that there was no evidence to show what particular tract was sold, counsel for appellants having overlooked that essential point. The evidence of the officer who made the sale, taken in connection with the evidence before in the record, has now removed all the uncertainty. By reference to the roll and memoranda made on it, he testifies that the taxes had been paid upon all the land except the 80 acres which were sold, and that the 80 acres in controversy was the land which he intended to sell. It is shown that the 40 acres assessed at $2.50 an acre were paid on, and it follows that the 80 acres sold were a part of the 120-acre tract assessed at the uniform price of $1.00 per acre.

COOPER, J., delivered the opinion of the court.

We find nothing in this cause as presented by the present record distinguishing it from the case presented on the former appeal. The attention of counsel and court was then directed to the sufficiency of the assessment of the land to uphold its sale for taxes, and we held it to be insufficient. *Sims* v. *Warren,* 67 Miss. 278. It is now attempted to support the assessment and supply its defects by evidence of what the tax collector did and intended to do in making the sale of the land for the taxes, and by evidence that payments made by Cummings and the administrator of the estate of William Morris were intended by them as payment of the taxes on other lands in the same subdivision, and thus, by the process of exclusion,

to show that the land sold was delinquent. The additional testimony, in effect, only shows that the collector intended to sell 80 acres of a tract of 160 acres, which 80 acres was whatever was not *intended* to be paid on by Cummings and Morris' administrator. The receipts given by the collector to these parties do not show upon what lands taxes were paid, and it is only by applying the receipts to the land *owned* by them that they are made to cover these, rather than any other land of like quantity in the subdivision.

The decree of the court below necessarily rests upon the predicate that there may be a valid sale for taxes without a valid assessment of the land sold, or that an assessment insufficient in the description of the property may be cured by applying it to any property not paid on before the sale for taxes.

The constitution requires an assessment of property for taxation, and this the legislature may not dispense with. The fundamental purpose is to secure equality and uniformity of the burden of taxation according to the value of the property taxed. To reach valuation there must be identification of the thing to be valued. If the whole of the subdivision in which the land in controversy is located had been valued at one price, a different question would be presented. But 40 acres of the 160 were assessed at $2.50 per acre and the remainder at $1.00 per acre. On the face of the roll it is impossible to say to which part of the subdivision the valuation of $2.50 is to be applied, or to what that of $1.00 relates.

The assessment required by the constitution must be provided in any scheme declared by the legislature for taxation; this accomplished, the constitutional command is obeyed, and it is within legislative discretion to provide nothing further save the machinery by which taxes shall be levied and collected upon the assessment thus made. But an assessment within and according to the constitution must be made before there can arise the power of sale provided by any legislative scheme or plan.

The revenue act, under which the sale of the lands here in controversy was made (Laws of 1878, p. 23), provided: "That no failure to designate the precise locality of any subdivision of land

within a section . . . . shall be held to vitiate the assessment or the sale thereof for the non-payment of taxes so assessed, if the section, township and range within which the land is situated be properly entered on the rolls; and it may be shown by parol testimony on any proceedings to vacate such assessment, or in any controversy respecting the conveyance of any such lands when sold for the non-payment of taxes, or any subsequent conveyance, to what particular subdivision such assessment or sale was intended to apply." Until it be shown that there was a valid assessment of property, it is useless to inquire whether a sale otherwise regular has been made, for the invalidity of an assessment nullifies all that follows. The question always returns, has there been a valid assessment of the property sold?

Looking to the evidence in this cause, we find nothing in aid of the assessment except the intention of the tax collector in making the sale, and this is an irrelevant and inconclusive matter, throwing no light upon the material inquiry as to what lands were assessed. Nor do we think it would have been competent to show by parol the intention of the assessor undisclosed by what he did in fact do and record upon the memorial provided by law as the exponent of his action. There cannot be an assessment of lands, within the constitutional requirement, which rests only in the memory and purpose of the officer. There must be official action evidenced by the roll he is required to make.

"The roll must furnish the clue which, when followed by the aid of parol testimony, conducts certainly to the land intended. It is admissible only to apply the description on the roll, which must give the start and suggest the course, which being followed will point out the land intended to be assessed." Campbell, J., in *Dodds* v. *Marx*, 63 Miss. 443. In that case the court was construing a provision of the code which provided for the admission of parol evidence if there is "enough in the description on the roll to be applied to a particular tract of land by the aid of such testimony," while the act controlling the question now under investigation provides for the introduction of such evidence where the section, township and range are given on the roll.

The act now under consideration is narrower than the code provision, for under it parol evidence is only admissible where the section, township and range are given, while under the code provision it is admissible whether the section, township and range are or are not on the roll. Under neither is it competent to do more than to apply the description to a particular tract; otherwise it would be to create an assessment by parol, which cannot be done.

*Reversed and remanded.*